IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

**TARGETED JUSTICE, INC.**
a 501(c)(3) Texas Corporation
1708 Navarro St #201
Victoria, TX 77901

    Plaintiff

Vs.

**FEDERAL BUREAU OF INVESTIGATION**
935 Pennsylvania Avenue NW
Washington, DC 20535

    Defendant

CIVIL NO.

**COMPLAINT**

TO THE HONORABLE COURT:

    COMES NOW TARGETED JUSTICE, INC., through the undersigned attorney, and respectfully alleges and prays:

**INTRODUCTION**

    1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 for injunctive and other appropriate relief. Plaintiff Targeted Justice seeks the immediate processing and timely release of agency records from Defendant Federal Bureau of Investigation (FBI).

    2.    On September 16, 2003, the president signed Homeland Security Presidential Directive 6 (HSPD-6) that authorized the creation of the Terrorist Screening Database (TSDB),

consolidating fourteen different terrorist lists spread among various federal agencies under a single roof. The authorized list would contain records about "individuals known or appropriately suspected to be or have been engaged in conduct constituting, in preparation for, in aid of or relating to terrorism ("Terrorist Information").

3. The FBI is the agency in charge of maintaining the list through its intra-agency outfit known as the Terrorist Screening Center (TSC).

4. The TSDB contains at least four categories. Two of these are known as Handling Codes 1 and 2 and are supposed to contain the records of those known or suspected to be engaged in terrorist activity. These two categories that contain the records of known and suspected terrorists ("KST") together are what is colloquially referred to as "the watchlist".

5. The FBI places on the TSDB individuals that do not meet the "reasonable suspicion" terrorist criteria and do not represent a threat to national security.

6. These individuals are added to the TSDB's Handling Codes 3 and 4 under secret criteria. Because they are not a terrorist threat, they do not undergo additional screening when traveling.

7. The FBI places the individuals that do not meet the terrorist criteria within two subcategories of the TSDB known as Handling Codes 3 and 4.

8. Individuals in Handling Codes 3 and 4 have never been arrested, indicted, tried or convicted of a terrorist offense.

9. The watchlist does not include records from the TSDB's Handling Codes 3 and 4, only those from Handling Codes 1 and 2.

10. United States Department of Justice's (DOJ) Office of the Inspector General's (OIG) 2005 Audit 05-27 on the TSC concluded, *inter alia*, that the records in Handling Codes 3

and 4 comprise 97% of the TSDB.

11. The OIG audit report 08-16 of the FBI concluded, *inter alia*, that Defendant did not remove records from the TSDB in a timely manner as required by agency regulations, allowing records to improperly linger indefinitely therein.

12. The May, 2009 OIG Audit Report 09-25 of the FBI watchlisting practices again concluded, i*nter alia*, that the agency did not timely remove records from the TSDB as required by agency regulation.

13. In light of uncontroverted DOJ reports regarding agency negligence and mishandling of TSDB records listed above, TARGETED Justice served a FOIA request on defendant FBI requesting the records of deceased individuals removed from the TSDB's Handling Codes 3 and 4 subcategories.  (**Exhibit 1**).

14. After having exhausted the administrative remedies ensuing FBI's denial of Targeted Justice's FOIA request through the timely filing of an appeal, Targeted Justice now moves for the Court to order the FBI to carry out an adequate search for records and produce complete responsive records to the request.

15. Targeted Justice also seeks an order enjoining the FBI from assessing fees for the processing of the request, as well as the imposition of attorney's fees and costs related to the filing of this complaint.

**PARTIES**

16. Targeted Justice, Inc. is a 26 USC § 501(c)(3) non-profit, non-partisan Texas educational, human rights, public interest and media organization with a membership of over four thousand individuals. Targeted Justice maintains the website www.targetedjustice.com that averages over 50,000 views in thirty days and publishes a newsletter in

www.targetedjustice.substack.com that exceeds 13,000 subscribers and over 150,000 views a month.

17. Targeted Justice is a news media organization engaged in disseminating information among the public about actual or alleged Federal Government activity that meets the criteria contained in 5 U.S.C. § 552(a)(6)(E)(v)(II).

18. Defendant FBI is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

19. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

20. Venue lies in the Southern District of Texas pursuant to 5 U.S.C. § 552(a)(4)(B), because it is the district in which the Plaintiff has its place of business.

## FACTS

21. On **October 31, 2023**, Targeted Justice served a FOIA request on defendant requesting the records removed from the TSDB's Handling Codes 3 and 4 subcategories. (**Exhibit 1**).

22. Targeted Justice did not request any <u>current</u> records from the TSDB's Handling Codes 3 and 4 subcategories.

23. Targeted Justice did not request any actual or removed records from the watchlist comprising Handling Codes 1 and 2 of the TSDB.

24. Targeted Justice sought a waiver of search, review, and duplication fees on the ground that disclosure of the requested records is "in the public interest because it is likely to significantly contribute to public understanding of the operations or activities of the government

and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

25. Targeted Justice also sought a limitation of fees on the ground that the records sought were to report the results of its endeavor since Targeted Justice qualifies as a "representative of the news media" and the records were not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

26. Targeted Justice also requested that for any records that Defendant FBI failed to produce, the agency provide a Vaughn Index and declaration setting forth reasonably detailed explanation for each withheld document as to why it falls within any statutory exemption. See *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

27. On November 6, 2023, the FBI denied the request. (**Exhibit 2**).

28. By letter dated January 31, 2004, filed through the OIP FOIA Star Portal, Targeted Justice filed an appeal. (**Exhibit 3**). Pursuant to F.R.Civ.Proc. 10(c), Plaintiff hereby adopts and incorporates by reference the entire contents of its appeal as if they were entirely reproduced herein.

29. On February 13, 2024, the Office of Information Policy of the United States Department of Justice (OIP) acknowledged the FOIA appeal (**Exhibit 4**). On the same date, the OIP issued a ruling denying the appeal, and confirming Defendant's denial of the records request. (**Exhibit 5**).

30. On February 13, 2024 the OIP also denied as moot the request for expedited appeal. (**Exhibit 6**).

### THE FBI'S RESPONSE AND ARGUMENTS ON APPEAL

31. Defendant did not produce a *Vaughn* Index with its reply. Instead, it included a boilerplate addendum form that invokes numerous exceptions to avoid production of records

without explaining how each one is specifically applicable to Targeted Justice's request.

32. Defendant set forth various grounds and exceptions to produce the records, none of which are applicable, valid or legitimate and violate FOIA.

33. By means of a *Glomar* response, the agency refused to "confirm or deny whether a particular person in a particular watchlist". This, despite the fact that the FOIA did not ask for records on people currently on a watchlist since it asked for a) records of people removed and b) in handling codes 3 and 4 of the TSDB that do not form part of the 'watchlist". See **Exhibit 1.**

34. Defendant's *Glomar* response pursuant to FOIA exception contained in 5 U.S.C. 552(b)(7)(E) violates FOIA.

35. Defendant's *Glomar* response also invoked Privacy Act exemption 552(j)(2) in support of the argument of the purported protection of the privacy rights of individuals who "may be on a watch list for a limited time and later removed."

36. Defendant is estopped from going against its prior actions and invoking privacy rights to avoid releasing the records of deceased people on the TSDB's Handling Codes 3 and 4 because its habitual conduct is that of publicly confirming that a deceased shooter or criminal figured on the actual KST 'watchlist' comprised of Handling Codes 1 and 2.

37. As an example of the above, Defendant has consistently admitted that actual KST figured on the TSDB after passing away as it has done in the following situations:

a. "Gunman suspected of killing Texas SWAT cop and 2 hostages was reportedly on FBI terror watchlist", ("The gunman who killed Texas SWAT Officer Jorge Pastore in a shootout that also left two hostages dead was wearing body armor and night vision goggles — and was on the FBI's terror watchlist, according to reports."), https://nypost.com/2023/11/15/news/gunman-who-killed-swat-cop-was-on-terror-watchlist-report/ archived at http://archive.today/nRgWJ and last accessed on February 26, 2024.

b. "NYC Subway Mass Shooter Was on FBI Terror Watch List", NYPD Announce 'Person of Interest' in Nationwide Manhunt, (""The suspect in the Brooklyn subway

shooting was on the FBI's terrorist radar in New Mexico until 2019,...") https://trendingpolitics.com/nyc-subway-mass-shooter-was-on-fbi-terror-watch-list-nypd-announce-person-of-interest-in-nationwide-manhunt-knab/ archived in http://archive.today/jSDDM and last accessed on February 26, 2024.

C. Boulder, Colorado mass shooting suspect known to FBI: report, ("The suspected gunman who killed 10 people in a mass shooting at a Boulder, Colo., grocery store this week was previously known to the FBI, according to a report."), https://www.foxnews.com/us/colorado-mass-shooting-suspect-known-to-fbi archived at http://archive.today/4aCqB and last accessed on February 26, 2024.

d. Orlando Gunman Was on Terror Watchlist, F.B.I. Director Says, ("The F.B.I. director said on Monday that the gunman in the mass killing in Orlando was on a terrorist watchlist from 2013 to 2014..."), https://www.nytimes.com/2016/06/14/us/omar-mateen-fbi.html archived in http://archive.today/WfIml and last accessed on February 26, 2024.

38. Furthermore, Defendant cannot legally invoke the privacy rights of deceased individuals to avoid producing the records requested because any such privacy rights cease to exist upon an individual's death.

39. Defendant's Glomar response violates FOIA's clear command that agencies search for and produce responsive records. The information sought is of considerable public significance, not only to enforce the public's right to assess whether the federal government's actions comply with regulatory, constitutional and legal limitations it must abide by.

### BOILERPLATE DENIALS IN FBIA "FOIPA ADDENDUM"

40. Defendant has adopted a boilerplate form to oppose the production of agency records requires legal expertise to disprove the  sweeping exceptions contained therein. See **Exhibit 2**, page 2.

41. The boilerplate exceptions addendum is repugnant to the FOIA and defies its purpose, as it discourages the public from scrutinizing the government's actions.

42. Defendant's boilerplate 3-part FOIPA addendum violates the basic precepts of the law, and should be declared illegal as utilized against Targeted Justice's FOIA request.

43. Defendant further included in the addendum form to justify the denial of records the exception contained in 5 U.S.C. § 552 (c) that pertain to "law enforcement and national security records" to deny the request.

44. Exceptions to the production of requested records invoked under 5 U.S.C. § 552(c) are not applicable to Targeted Justice's record request.

45. Defendant FBI has admitted that individuals on the TSDB Handling Codes 3 and 4 "do not represent a threat to national security". The records removed from those categories thus do not entail have nothing to do with national security.

46. Defendant FBI acknowledges that individuals on the TSDB Handling Codes 3 and 4 are not subjected to additional screening when traveling because they do not represent a threat to national security.

47. "National-security concerns must not become a talisman used to ward off inconvenient claims—a "label" used to "cover a multitude of sins." *Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985).

48. In order to legally assert that a national security exemption to the production applies, Defendant had an obligation to produce a sworn statement consistent with the September 23, 2009 "*Policies and Procedures Governing Invocation of State Secrets Privilege*" issued by the United States Attorney General Eric H. Holder and did not do so.

49. Revealing removed records of deceased individuals from Handling Codes 3 and 4 does not involve law enforcement or national security.

50. Therefore, the records of those removed from Handling Codes 3 and 4 cannot be exempted from production under 5 U.S.C. § 552(c) because they do not entail law enforcement or intelligence activities.

51. The invoked exception 5 U.S.C. § 552(c) is also not warranted on the grounds that it relied on erroneously characterizing Targeted Justice's request. Replying that "maintaining the confidentiality of watchlists is necessary to achieve the objectives of the US Government" is inapplicable to Targeted Justice's actual request that did not ask for any current or past <u>watchlist</u> record.

52. Defendant's reliance on the exception regarding "Intelligence Records" exception under 5 U.S.C. 552/552a (b)(1), (b)(3) and (j)(2) asserting it would "reveal intelligence sources, methods, or activities protected by exemption (b)(3)" is improper.

53. The "intelligence records" exception is inapplicable as Defendant has acknowledged that individuals on Handling Codes 3 and 4 do not meet the reasonable suspicion criteria, are not "a threat to national security", and are "not screened as such".

54. Records about deceased individuals removed from the TSDB's Handling Codes 3 and 4 cannot be considered "intelligence records", because they have passed away and have been removed from a list of individuals did not meet any terrorist criteria to be included on any terrorist database to begin with.

55. Going against its own prior acts, Defendant also invoked as an objection to the production of records that revealing "who was listed on any government watch list" would result in terrorists taking actions to avoid detection. This objection is groundless since it once again misrepresents Targeted Justice's request that did not ask for any <u>actual</u> or <u>past</u> watch list record that contains information on known and suspected terrorists.

56. Furthermore, the objection is inapplicable because the records Targeted Justice sought were those removed from Handling Codes 3 and 4 that the FBI has admitted contain the names of non-investigative subjects that pose no threat to national security, do not meet the

terrorist reasonable suspicion criteria, and do not appear in the watchlist.

57. Defendant's denial is also unwarranted as it objected to Plaintiff's request by falsely stating that it entailed revealing the identities in the witness security program although the request did not ask for any such records.

58. Another inapplicable exception that Defendant invoked and cannot be sustained under FOIA is that the request entailed confidential informant records, none of which Targeted Justice requested.

59. Defendant's three-part boilerplate list of exceptions attached to the November 6, 2023 FOIA denial asserting that the request requires a "search for reference entity records, administrative records of previous FOIPA requests, or civil litigation files", "Witness Security Program Records", "Confidential Informant Records", "Criminal History Records or Rap Sheets". are equally inapplicable, misplaced, contrary to law, and repugnant to basic FOIA precepts because Targeted Justice did not request any such records.

60. The aforementioned exemptions that Defendant invoked pursuant to sections (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)] lack factual and legal grounds.

61. Targeted Justice argued in its FOIA appeal that none of the exceptions invoked served to prevent the production of the records sought on the following grounds.

   a. Records of deceased people from a list that does not entail law enforcement interests are not, themselves, "techniques and procedures for law enforcement investigations or prosecutions," nor would they facilitate "circumvention of the law." See 5 U.S.C. § 552(b)(7)(E).

   b. The FBI's Glomar response is deceitful, contrary to FBI's admissions contained in various documents under penalty of perjury generated throughout recent years of litigation and thus in violation of the Freedom of Information Act.

   c. Targeted Justice did not ask for the identities of the people currently on the

    watchlist which comprise people in Handling Codes 1 and 2 of the TSDB; people in handling codes 3 and 4 of the TSDB are not deemed to be on the 'watchlist'. Thus, the FBI's response is misleading and incorrect.

d. No law enforcement privilege applies to records of people removed from handling codes 3 and 4 of the TSDB because individuals listed on handling codes 3 and 4 do not represent a threat to national security, and are placed on those categories without reasonable suspicion for it.

e. No law enforcement privilege or privacy exceptions can apply to records about deceased people.

f. The FBI is estopped from invoking any privacy exception regarding deceased people on the TSDB since it has a history of disclosing the names of people whose names were actually on the watchlist after they pass away.

g. The response also fails to explain why acknowledging the existence or nonexistence of responsive records would reveal generally unknown law enforcement techniques, procedures, guidelines or how it could "reasonable be expected to risk circumvention of the law, making inapplicable exception 7(E) that only protects laws enforcement techniques, procedures and guidelines unknown to the general public.

h. The disclosure of requested records of deceased people added to the TSDB despite failing to meet the reasonable suspicion terrorist criteria does not entail revealing law enforcement techniques, procedures, and guidelines because the records are about people that were not criminals or a threat to national security.

i. The records requested do not fall under "intelligence records" since under FBI's own admissions, the deceased individuals removed from handling codes 3 and 4 never represented a terrorist or national security threat.

j. The disclosure of records of deceased individuals does not represent a threat of any kind.

k. No records of identities in the witness security program were requested.

l. No Privacy Act exemption applies to people that ae no longer alive.

m. No "entity records, administrative records of previous FOIPA requests, or civil litigation files" were requested.

n. No rap sheet or criminal history record has been requested. No rap sheet or criminal history record were requested.

62. Targeted Justice's FOIA appeal (**Exhibit 3**) is adopted by reference as if it was

entirely reproduced herein.

63. Despite the egregious violation of FOIA, the DOJ Office of Information Policy confirmed Defendant's denial of records. (**Exhibit 5**).

## COUNT I - FBI FOIA VIOLATION

64. Paragraphs 1-61 are hereby adopted by reference.

65. Defendant's failure to make a reasonable effort to search for records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3), and Defendant's corresponding regulations.

66. Defendants have improperly withheld the responsive record, or portions thereof, under FOIA Exemption Five, 5 U.S.C. § 552(b)(5).

67. Defendant's failure to make promptly available the records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendant's corresponding regulations.

68. Defendant's failure to grant Plaintiffs' request for a waiver of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendant's corresponding regulations.

69. Defendants have improperly withheld the responsive record, or portions thereof, under FOIA Exemption Three, 5 U.S.C. § 552(b)(3), to the extent Defendants rely on it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to GRANT this Complaint and consequently ORDER the following relief:

a. Find improper Defendants' withholding of the requested record pursuant to FOIA;

b. Order Defendant to conduct a thorough search for all responsive records;

c. Order Defendant to immediately process and release all records responsive to the Request;

d. Enjoin Defendant from charging Plaintiff search, review, processing, and duplication

fees in connection with responding to the Request;

    e. Award Plaintiff costs and reasonable attorneys' fees in this action and

    f. Grant such other relief as the Court may deem just and proper.

   Respectfully submitted,

                        **ANA LUISA TOLEDO**

                 */s/ Ana Luisa Toledo*

                 *Southern District of Texas No. 3825092*
                 *Attorney for Plaintiffs*
                 *PO Box 15990*
                 *Houston, TX 77220-1590*
                 *Tel. 832-247-3046*
                 analuda@proton.me

**DATED** this 1st day of March, 2024.