# EXHIBIT 3:

# Targeted Justice FOIA Appeal (Without exhibits)



January 31, 2024

Director, Office of Information Policy (OIP),
United States Department of Justice
441 G Street, NW, 6th Floor
Washington, D.C. 20530

VIA OIP FOIA STAR PORTAL

To Whom It May Concern:

Targeted Justice ("TJ") and the undersigned, Ana L. Toledo, Esq., write to appeal the Federal Bureau of Investigation's November 6, 2023, refusal to provide the names of the identities removed from the Terrorist Screening Database ("TSDB"), including the date of removal, as requested in FOIA 1609707-000. See Exhibit A, request for the identities removed from the TSDB's Handling Codes 3 and 4 due to death.

The FBI's denial letter stated "…that the U.S. Government can neither confirm nor deny whether a particular person is on any terrorist watch list" on the basis that "Maintaining the confidentiality of government watch lists is necessary to achieve the objectives of the U.S. Government, as well as to protect the privacy of individuals who may be on a watch list for a limited time and later removed. If the U.S. Government revealed who was listed on any government watch list, terrorists would be able to take actions to avoid detection by government authorities."

The FBI's response is contrary to law.

The Freedom of Information Act "calls for broad disclosure of Government records."[1]

An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions.[2]

The refusal to confirm or deny the existence of a responsive record known as a "Glomar Response" must include "reasonably detailed explanations" that demonstrate that disclosing the existence (or non-existence) of the requested records would cause cognizable harm under FOIA.[3] For the agency's response to be lawful, these explanations must be logical and plausible.[4]

The FBI did not include a truthful explanation meeting these requirements.

The FBI's Glomar response is deceitful, contrary to FBI's admissions contained in various documents under penalty of perjury generated throughout recent years of litigation and thus in

---

[1] *C.I.A. v. Sims,* 471 U.S. 159, 166, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985).
[2] *American Civil Liberties Union v. U.S. Dept. of Defense*, 628 F.3d 612, 619 (2011).
[3] See, e.g. *N.Y. Times Co. v. DOJ* , 756 F.3 d 100, 112 ( 2d Cir. 2014).
[4] See *Florez v. CIA,* 829 F.3 d 178, 184-185 (2d Cir. 2016).

**Appeal of FBI FOIA 1609707-000**
**January 31, 2024**

violation of the Freedom of Information Act and should thus be reversed on various grounds. For the reasons set forth below, TJ and Ana Toledo request the appeal of the denial set forth above.

## INAPPLICABILITY OF EXCEPTIONS INVOKED

The agency's automated response overlooks the fact that the records sought involve a) deceased people; b) that were never on the watchlist and c) did not meet the reasonable suspicion criteria to be on any list.

**First**: TJ did not ask for names of people that are currently on the terrorist watchlist. TJ asked for the names removed from Handling Codes 3 and 4 of the Terrorist Screening Database due to the person's death. Since TJ did not ask for the identities of the people currently on the watchlist, it is misleading for the FBI to reply that they do not disclose people on the watchlist.

**Second**: Pursuant to a statement under penalty of perjury signed by the Terrorist Screening Center's former deputy director, Timothy Groh, in the *Elhady v. Piehota* case, the "watchlist" only comprises handling codes 1 and 2 of the TSDB. People in handling codes 3 and 4 of the TSDB are not deemed to be on the 'watchlist'. According to Mr. Groh, individuals listed on handling codes 3 and 4 are not on the "watchlist" because they do not represent a terrorist threat and are not screened as such. They are included in the TSDB under an exception to the 'reasonable criteria' requirement under secret [and illegal] criteria.

Therefore, it is inaccurate and misleading for the FBI to deny the records sought on the basis that they entail people on the watchlist because identities of people listed on handling codes 3 and 4 subcategories of the TSDB are not in any watchlist.

No law enforcement privilege can apply to information about dead people that were not a terrorist threat to begin with, were not in the watchlists' handling codes 1 and 2 and were placed on the TSDB under a secret exception to the reasonable suspicion criteria.

**Third**: The FBI has a history of disclosing the names of people whose names were actually on the watchlist after they pass away. The FBI has never alleged confidentiality over the actual watchlisting status of a dead person. Regardless of this, since the records requested do not pertain to people on the watchlist, the alleged prejudice that the FBI alleges it would suffer is no such thing.

**Fourth**: No law enforcement privilege applies to obstruct the production of the list of identities of deceased persons removed from the handling codes 3 and 4 categories of the TSDB that contain exceptions to the reasonable suspicion criteria because prior to their death, were not listed on the watchlist, and were improperly and illegally included on the TSDB where they did not belong in in the first place.

**Fifth**: No Privacy Act exemption applies pursuant to sections (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)] because records about deceased people such as those requested in the FOIA request. Deceased people have no expectation of privacy, and thus the government is precluded from invoking the Privacy Act to avoid producing the requested records.

**Appeal of FBI FOIA 1609707-000**
**January 31, 2024**

In light of the grounds set forth above, FBI's denial of FOIA request 1609707-000 was illegal and warrants reversal.

Agency embarrassment for their corrupt or improper deeds is not a valid reason for denying the requested records. Executive Order 13526 provides that: "in no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to conceal violations of law, inefficiency, or administrative error."

The FBI's response must be reversed inasmuch as it also fails to explain why acknowledging the existence or nonexistence of responsive records would reveal generally unknown law enforcement techniques, procedures, guidelines or how it could "reasonable be expected to risk circumvention of the law." Court precedent defining law enforcement "techniques" and "procedures" under exemption 7(E) as "referring to how law enforcement officials go about investigating a crime" cannot include records about people that a) the FBI admits do not meet the "reasonable suspicion" criteria and b) do not represent "a threat to national security" to be included on the watchlist of known and suspected terrorists that comprise handling codes 1 and 2 of the TSDB.

Furthermore, exception 7(E) only protects laws enforcement techniques, procedures and guidelines unknown to the general public. The records sought were widely distributed among 532 corporations, 1440 organizations, 60 countries and 18,000 state, tribal and federal law enforcement agencies. The information was clearly accessible to the public.

Besides, the records sought are about people that were removed from the TSDB's handling codes 3 and 4 after passing away. Their disclosure by no means entails revealing law enforcement techniques, procedures and guidelines. The request only entails deceased, innocent people that did not meet the reasonable suspicion criteria to be on the watchlist, but nonetheless the FBI added their names to the TSDB handling codes 3 and 4 that do not comprise the watchlist.

Exceptions contained in 5 U.S.C. 552(c) relating to law enforcement and national security records do not apply for the same four grounds set forth above, <u>incorporated herein in their entirety</u>. Furthermore, for the agency to invoke such privileges, it must include with its reply an affidavit detailing the grounds for the privilege and complying with the requirements for doing so. The FBI did not include such a document along its reply.

Likewise, the records requested do not fall under "intelligence records". FBI's own admissions establish that the individuals listed on handling codes 3 and 4 do not represent a terrorist or a threat to national security. Therefore, they do not fall under the "intelligence records" category. In the unlikely event that the information on innocent civilians that do not represent a terrorist threat constituted intelligence information, the death of the person makes moot any such pretext.

Moreover, the denial reason of "records about any individual" only applies to living persons, not deceased ones. Dead people have no expectation of privacy.

**Contrary to what the boilerplate form included along with FBI's response asserts as another reason to deny the records requested, no records of identities in the witness security program were requested**. Thus, the exemptions invoked pursuant to sections (b)(7)(D), (b)(7)(E), and

3

**Appeal of FBI FOIA 1609707-000**
**January 31, 2024**

(b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)] to avoid the production of the requested records are inapplicable.

The verbiage regarding "a search for reference entity records, administrative records of previous FOIPA requests, or civil litigation files" is likewise inapplicable and should be discarded. All the records sought was deemed removed from the terrorist screening database and must be preserved for 99 years pursuant to the law.

The boilerplate "Foreseeable Harm" Standard set forth to preclude the production of the records is illegal as applied to the request inasmuch as it seeks to prevent the disclosure of agency corruption and illegal actions. While it is foreseeable that the FBI could suffer harm for the disclosure of its corrupt and illegal conduct, that is not a valid ground to deny the production of the records sought. Agency embarrassment is not sufficient grounds to invoke the "foreseeable harm" standard to avoid the production of records warranted under FOIA because the public interest compels it. Again: Executive Order 13526 provides that: "in no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to conceal violations of law, inefficiency, or administrative error."

The "Criminal History Records or Rap Sheets" boilerplate objection invoked to avoid producing the records requested is equally inapposite. No rap sheet or criminal history record has been requested. Mr. Groh admitted on behalf of the FBI that the people on handling codes 3 and 4 were non-terrorists that did not present a threat to national security and were included on the TSDB devoid of the reasonable suspicion criteria. Mr. Samuel Robinson repeated this under penalty of perjury as well, adding devoid of legal authority that the criteria for the placement of those individuals is not to be divulged. Since the records requested entail deceased people, the exemption is even less viable.

The agency has acted with temerity in the denial of the FOIA request. TJ requests that the agency be ORDERED to immediately produce the records requested.

Targeted Justice hereby appeals from the FBI's decision, and respectfully asks that the FBI release all responsive records.

Looking forward to a prompt resolution of this straightforward matter I remain,

Sincerely,

//s// *Ana L. Toledo*

Ana L. Toledo, Esq. for
Targeted Justice, Inc.