# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | |
|---|---|
| TARGETED JUSTICE INC., § § Plaintiff, § § v. § § FEDERAL BUREAU OF § INVESTIGATION, § § Defendant. § | Civil Action No. 6:24-cv-00005 |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant Federal Bureau of Investigation ("FBI") respectfully moves for summary judgment.

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff filed suit on March 1, 2024 (ECF No. 1), alleging claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The FBI answered on April 8, 2024 (ECF No. 8). Plaintiff served discovery requests on the FBI on April 22, 2024, and the FBI moved for a protective order (ECF No. 9). The Court granted the protective order, staying discovery until after the filing of a motion for summary judgment (ECF No. 17). At the initial conference on June 13, 2024, the Court ordered the FBI to provide supporting documents regarding the FBI's search and response by August 12, 2024. The FBI timely provided to Plaintiff a search declaration and corresponding exhibits and now moves for summary judgment.

**STANDARD OF REVIEW**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a properly supported motion for summary judgment, the non-movant must present more than a mere scintilla of evidence. *Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F. App'x 764, 766 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Mere "conclusory allegations, speculation, and unsubstantiated assertions," without more, are insufficient to satisfy the non-movant's burden at the summary judgment stage. *Carr v. Sanderson Farms, Inc.*, 665 F. App'x 335, 338-39 (5th Cir. 2016). A self-serving affidavit or deposition is insufficient to create a fact issue when the contests are conclusory, vague, or not based on personal knowledge. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160-61 (5th Cir. 2021).

**FACTUAL BACKGROUND**

The FBI's top priority is "[p]rotecting the United States from terrorist attacks." *What We Investigate: Terrorism*, FEDERAL BUREAU OF INVESTIGATION, https://www.fbi.gov/investigate/terrorism (last visited Sept. 5, 2024). To that end, the FBI's Terrorist Screening Center ("TSC") "keeps the American people safe by sharing terrorism-related information across the U.S. government and with other law enforcement agencies." *Terrorist Screening Center*, FEDERAL BUREAU OF INVESTIGATION, https://www.fbi.gov/investigate/terrorism/tsc (last visited Sept. 5, 2024). The TSC has consolidated what was previously several different terrorism watchlists into one federal terrorism watchlist. *Id.* This watchlist has "information on people reasonably suspected to be

2

involved in terrorism or related activities." *Id.* As stated on the FBI's website, "[f]or security reasons, the TSC does not confirm anyone's status on the watchlist." *Id.*

On October 31, 2023, Plaintiff Ana Luisa Toledo submitted an electronic FOIA request to the FBI, seeking "[a]ll documents containing all the identities removed from the Terrorist Screening Database's Handling codes 3 and 4 due to the person's death, including date of removal." Ex. A to Ex. 1 at 3 (FOIA request)*;* Ex. 1, Seidel Decl., ¶ 5. She also sought a fee waiver and expedited processing. Ex. A to Ex. 1 at 2, 4; Ex. 1, Seidel Decl., ¶ 5.

In response, the FBI sent Plaintiff a letter on November 6, 2023, stating:

> Please be advised that the U.S. Government can neither confirm nor deny whether a particular person is on any terrorist watch list. Maintaining the confidentiality of government watch lists is necessary to achieve the objectives of the U.S. Government, as well as to protect the privacy of individuals who may be on a watch list for a limited time and later removed. If the U.S. Government revealed who was listed on any government watch list, terrorists would be able to take actions to avoid detection by government authorities. Thus, the FBI neither confirms nor denies the existence of your subject's name on any watch lists pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].

Ex. B to Ex. 1 at 1 (FBI response letter); Ex. 1, Seidel Decl., ¶ 6.

Plaintiff appealed the FBI's response to her FOIA request, and the Department of Justice's Office of Information Policy ("OIP") affirmed the FBI's "action in refusing to confirm or deny the existence of any records responsive to [Plaintiff's] request." Ex. C to Ex. 1 (appeal); Ex. E to Ex. 1 at 1 (OIP letter decision); *see also* Ex. 1, Seidel Decl., ¶ 7, 9 (summarizing appeal). OIP cited the same exemption as the original response, explaining that "[t]he existence of any responsive records would be protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(E). This provision concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures

3

or guidelines for law enforcement investigations or prosecutions." Ex. E to Ex. 1 at 1. OIP further noted that "it is reasonably foreseeable that confirming or denying the existence of such records would harm the interests protected by this exemption." *Id.*

Plaintiff then filed this lawsuit on March 1, 2024 (ECF No. 1). Though OIP had confirmed that the FBI's response letter was proper and that a search was not required, in the spirit of transparency, the FBI conducted a search and did not locate any responsive records. Michael G. Seidel, Section Chief of the Record/Information Dissemination Section ("RIDS") of the Information Management Division ("IMD") at the FBI, has provided a declaration explaining the search process. Mr. Seidel attested that, "[i]n response to most FOIA requests received by the FBI, the FBI conducts a search of the Central Records System (CRS) to determine if the FBI has records about a particular subject", because "[t]he CRS is where the FBI indexes information about individuals, organizations, events, or other subjects of investigative interest for future retrieval." Ex. 1, Seidel Decl., ¶ 11. However, in this case, "after reviewing Plaintiff's FOIA request, the FBI determined that a standard search of the CRS would be unlikely to locate records potentially responsive to Plaintiff's request because there is no specific indexable term associated with the records sought and the records are not directly connected with a specific investigation, program, subject, event, or initiative that would be indexed in the CRS." *Id.*

Therefore, the FBI went beyond its usual practice and searched a database not typically included in searches responding to FOIA requests. "[T]he FBI took the extraordinary step of conducting a targeted search outside the CRS. Specifically, the FBI, via RIDS, conducted a targeted search of the Terrorist Screening Center (TSC) because the FBI determined that the

4

TSC was the most reasonably likely location to house responsive records since the TSC is responsible for the development, maintenance, and administration of the Terrorist Screening Dataset (TSDS) to which the records sought pertain." *Id.*, ¶ 12. At RIDS' request, TSC searched for the requested records but did not locate any responsive records. *Id.*, ¶ 13. In addition, "the TSC further clarified that although its systems maintain a record of which identities are removed, the record does not contain details of an individual's death as a data point." *Id.* Because of this, "any request seeking the combined information outlined in Plaintiff's request would require the cooperation of numerous offices utilizing multiple databases to create a new set of records." *Id.*

Thus, Mr. Seidel concluded that "the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be likely to locate responsive records under the FOIA." Ex. 1, Seidel Decl., ¶ 14.

## ARGUMENT

### I.   Background Law on the FOIA

FOIA cases "appropriately are decided on motions for summary judgment." *Transparency Project v. United States Dep't of Just.*, No. 420CV00467SDJCAN, 2022 WL 18776191, at *2 (E.D. Tex. Sept. 9, 2022) (citing *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). To prevail at summary judgment, the agency must demonstrate that "its search for the requested material was adequate and that any withheld material is exempt from disclosure." *Calle v. F.B.I.*, No. 3:10-CV-2362-M, 2011 WL 3820577, at *4 (N.D. Tex. Aug. 5, 2011), report and recommendation adopted, No. 3:10-CV-2362-M, 2011 WL 3837031 (N.D.

5

Tex. Aug. 26, 2011) (citing, e.g., *Cooper Cameron Corp. v. U.S. Dep't of Lab., Occupational Safety & Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002)).

Further, FOIA "does not require an agency to show that it has identified every document that is responsive to a request, but only that 'it performed a search reasonably calculated to yield responsive documents.'" *Negley v. F.B.I.*, 589 F. App'x 726, 729 (5th Cir. 2014) (citations omitted). An agency's adequate search can be established by showing that the agency used "methods which can be reasonably expected to produce the information requested." *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (citations omitted). To meet this burden, the agency can use affidavits or declarations which are entitled to a "presumption of legitimacy . . . unless there is evidence of bad faith in handling the FOIA request." *Calle*, 2011 WL 3820577, at *4 (citing *Batton* 598 F.3d at 176).

"Once the agency has shown that its search was reasonable, the burden shifts to the plaintiff to present evidence creating a genuine issue of material fact 'as to the adequacy of the search.'" *Brewer v. United States Dep't of Just.*, No. 3:18-CV-1018-B-BH, 2019 WL 3948351, at *4 (N.D. Tex. July 30, 2019), report and recommendation adopted, No. 3:18-CV-1018-B, 2019 WL 3947132 (N.D. Tex. Aug. 21, 2019) (citing *Negley*, 589 F. App'x at 730). A plaintiff cannot defeat a summary judgment motion with "[m]ere speculation that as yet uncovered documents may exist." *Negley*, 589 F. App'x at 730. "As a matter of law, a requester's demand that certain records systems be searched does not obligate the agency to search those systems." *Morgan v. Fed. Bureau of Investigation*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *3 (W.D. Tex. May 24, 2016) (citation omitted). Instead, "the relevant inquiry is whether the agency could reasonably expect to locate responsive documents on systems other than ones searched." *Id.*

6

## II. The FBI performed an adequate search that was reasonably calculated to yield responsive documents.

Courts have granted summary judgment based on declarations similar to the one provided here by the FBI. For example, in *Rutila v. United States Dep't of Transportation*, the Court granted summary judgment in favor of the agency, based on declarations attesting that "no other organization within the agency would be likely to maintain the records [the plaintiff] requested." No. 3:16-CV-2911-B, 2022 WL 2359640, at *7 (N.D. Tex. June 30, 2022), aff'd, 72 F.4th 692 (5th Cir. 2023). Because the agency "requested any records from all the agencies that might prove responsive to [the] request. . . . [T]he search 'was reasonably calculated to discover the requested documents.'" *Id.*

Similarly, in *Morgan v. Fed. Bureau of Investigation*, the Section Chief of RIDS explained in a declaration that "any and all responsive records would reasonably be expected to be located on the FBI's Central Records System (CRS), the principal records system used to locate information responsive to FOIA requests." No. A-15-CA-1255-SS, 2016 WL 7443397, at *2 (W.D. Tex. May 24, 2016). The court concluded that "[b]ased on Hardy's affidavit, and considering the lack of any contradictory evidence or evidence of bad faith, . . . these search methods could be 'reasonably expected to produce the information requested' and were therefore adequate." *Id.* The court specifically rejected the unsupported claim that the FBI should have searched other systems, since the declaration specifically stated that "[a]t this point, the FBI has no factual basis to conclude records exist anywhere else; therefore additional searches are not warranted." *Id.* at *3.

Here, Mr. Seidel's declaration provided similar information establishing the adequacy of the FBI's search. Mr. Seidel attested that, "[i]n response to most FOIA requests received

7

by the FBI, the FBI conducts a search of the Central Records System (CRS) to determine if the FBI has records about a particular subject." Ex. 1, Seidel Decl., ¶ 11. However, "after reviewing Plaintiff's FOIA request, the FBI determined that a standard search of the CRS would be unlikely to locate records potentially responsive to Plaintiff's request," since there was "no specific indexable term associated with the records sought and the records are not directly connected with a specific investigation, program, subject, event, or initiative that would be indexed in the CRS." *Id.*

Therefore, the FBI took the extraordinary step of conducting a targeted search outside the CRS, which resulted in searching a location not typically included in FOIA responses. Specifically, "the FBI, via RIDS, conducted a targeted search of the Terrorist Screening Center (TSC) because the FBI determined that the TSC was the most reasonably likely location to house responsive records since the TSC is responsible for the development, maintenance, and administration of the Terrorist Screening Dataset (TSDS) to which the records sought pertain." *Id.*, ¶ 12. TSC searched but failed to locate any responsive records. *Id.*, ¶ 13. Instead, the information sought by Plaintiff is not readily kept by the FBI and would therefore require the creation of new records after gathering information from multiple locations. *Id.* ("[T]he TSC further clarified that although its systems maintain a record of which identities are removed, the record does not contain details of an individual's death as a data point and any request seeking the combined information outlined in Plaintiff's request would require the cooperation of numerous offices utilizing multiple databases to create a new set of records.").

Therefore, Mr. Seidel concluded that "the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude

that a search elsewhere would reasonably be likely to locate responsive records under the FOIA." *Id.*, ¶ 14; *see also Rutila*, No. 3:16-CV-2911-B, 2022 WL 2359640, at *7 (finding search reasonably calculated to discover the requested documents based on declarations attesting that "no other organization within the agency would be likely to maintain the records [the plaintiff] requested").

Moreover, the FBI is not required to search any additional databases, as "Plaintiff has provided no information for the FBI to reasonably conclude that records responsive under the FOIA would reside in any other location and there is no indication from the FBI's targeted search efforts that responsive records would reside in any other FBI location." *Id.*, ¶ 14. "The relevant inquiry is whether the agency could reasonably expect to locate responsive documents on systems other than ones searched," and there is no evidence suggesting other FBI systems are reasonably expected to contain additional responsive documents. *See Morgan*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *3 (FBI's search was adequate without searching other system, since declaration stated that "[a]t this point, the FBI has no factual basis to conclude records exist anywhere else; therefore additional searches are not warranted."). Accordingly, the FBI's search was adequate and included methods reasonably expected to produce the requested information.

## CONCLUSION

For the foregoing reasons, Defendant Federal Bureau of Investigation respectfully requests that the Court enter summary judgment in its favor.

Dated: September 11, 2024   Respectfully submitted,

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

By: */s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Texas Bar No. 24106434
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9600
Fax: (713) 718-3303
E-mail: myra.siddiqui@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on September 11, 2024, the foregoing was filed and served on counsel for Plaintiff via the Court's CM/ECF service.

                                          */s/ Myra Siddiqui*
                                          Myra Siddiqui
                                          Assistant United States Attorney